MARY J. PARKER et al., Administrators, etc., Respondents, *v.* THE BOARD OF SUPERVISORS OF SARATOGA COUNTY, Appellant.

Under the provisions of the acts of 1864 and 1865 (Chaps. 8 and 72, Laws of 1864; Chap. 41, Laws of 1865), conferring upon boards of supervisors power to borrow money on the credit of their respective counties to pay bounties, etc., and to execute obligations for its payment, the power so conferred was not intended to be limited to a single exercise thereof, but said board was authorized to borrow money and to renew the county obligations from time to time for the purpose of paying or continuing the indebtedness created under said acts.

*It seems* that boards of supervisors have no inherent power to borrow money or to issue negotiable paper, but must find the authority therefor in some statute, given either expressly or by implication.

In November, 1866, the board of supervisors of S. county passed resolutions providing for raising, by taxation, a certain amount of the bounty debt, and directing the county treasurer " to procure an extension of the time of payment of the residue." The debt so provided for, termed the town bounty debt, at that time amounted to over $500,000, represented by a large number of separate obligations, a large portion of which matured in February thereafter. No other provision was made for the payment of the maturing obligations. Similar resolutions were passed at each annual session of the board down to 1875. *Held,* that the authority given was to be construed in reference to the circumstances, and was not limited to an extension of the then outstanding obligations, but authorized the county treasurer to borrow money to pay them as they matured, and to issue new obligations in renewal of those then existing or for the new loans.

In each year from 1865 to 1875, the accounts of the treasurer, which, with the vouchers accompanying them, showed that he had made new loans and issued new obligations, were audited without objection by a committee of the board. *Held,* the inference was irresistible that the board was cognizant of the facts, and its acquiescence in the assumption of power by the treasurer to borrow money and give new obligations as a means of extending the debt, was cogent evidence that the authority intended to be conferred included these transactions.

*It seems* any authority given to a county by the legislature to extend its indebtedness, includes the power to do it by borrowing money and substituting new obligations in place of the old ones.

The town bounty debt, so called, was incurred in pursuance of a resolution of the board of supervisors authorizing the borrowing of money on the credit of the county, to be disbursed for bounties on the order

of the supervisors of the respective towns. The amount so drawn by each supervisor it was declared should constitute a debt of his town payable by taxation of its property. There was no vote of the electors of the town authorizing the debt as prescribed by the act of 1864 (§ 22, Chap. 72, Laws of 1864). *Held,* that the debt was legally a debt of the county, not of the several towns; but that the authority of the treasurer extended to it, and it was immaterial that it was not described in the resolution with legal accuracy.

In an action upon notes issued by the county treasurer to P., plaintiff's intestate, for moneys loaned, ostensibly to pay maturing obligations of the county, in pursuance of said resolutions of the board of supervisors and in renewal of notes so given, it appeared that there was a fraudulent over-issue of notes by the county treasurer to a large amount; that notes were outstanding at the time of the annual meeting of the board of supervisors in 1874 to the amount of $138,631, while if the money raised by taxation had been honestly applied and he had borrowed only sufficient to extend the portion of the debt he was directed to have extended, the whole debt would have been but $20,801. It did not appear that the treasurer misapplied any of the moneys for which the notes in suit were given, and at no time did the indebtedness the treasurer was authorized to extend fall short of the loans made by P., and the good faith of the lender was not questioned *Held,* that the evidence failed to establish a defense to the notes; that as the authority given to the treasurer authorized transactions and dealings in form of the same precise character as those which took place between the treasurer and the payee of the notes, the presumption was that they were authorized; and if, in fact, they were not within the actual limits of the power, the burden was upon defendant to show it.

It is immaterial in this regard whether the agency is a general one or confined to a particular series of transactions for the principal.

It was shown that in some years renewal notes were given to P. after the treasurer had renewed notes held by other parties exceeding in amount the debt which the board of supervisors had requested him to extend. *Held,* that this did not make out the defense; that there was as much reason for considering those other notes to be representatives of unauthorized loans, as there was for regarding as of that character the notes surrendered by P. on receiving the new notes.

It was claimed that the resolutions of the board were invalid, because they assumed to delegate to the treasurer the judicial and legislative power of the board to determine the extent and amount of the liabilities of the county and to audit and allow the same. *Held,* untenable; as the authority was to extend a debt already existing, not to create a new debt, or to pass upon or allow a disputed or doubtful claim.

Also, *held,* that it was not necessary to present the claim to the board of supervisors for audit.

Whenever the act of an agent is apparently authorized by the terms of his power, and is not, so far as a third person dealing with the agent can know, in excess of his authority, the act is presumptively within the authority, and the burden of proving that it was done after the authority was spent rests upon the principal. The burden is not met or the presumption overthrown by proof that in the course of the agent's dealings he fraudulently exceeded his authority; it must be shown that the particular transaction was unauthorized.

Bonds and notes of a county, issued for loans authorized by law, are not open accounts for county charges which must be presented to the board of supervisors for audit.

As to whether the county could be charged in case it had been affirmatively shown that the notes in question were fraudulently issued by the treasurer in excess of his authority, *quære.*

Whether the rule that the principal may be bound by a false representation by an agent of the existence of an extrinsic fact peculiarly within the agent's knowledge, upon the existence of which his power depends, applies to public agents, *quære.*

(Argued June 10, 1887; decided October 4, 1887.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made the 4th Tuesday of January, 1885, which affirmed a judgment in favor of plaintiffs, entered upon a decision of the court on trial without a jury.

This action was brought upon certain notes issued to Hiram Parker, plaintiff's intestate, by Henry A. Mann, as treasurer of the county of Saratoga, of one of which notes the following is a copy :

" No. 8.

"SARATOGA COUNTY TREASURER'S OFFICE, }<br>
"BALLSTON SPA, *February* 15, 1875. }

" In pursuance of a resolution, passed November, 1874, by the board of supervisors of Saratoga county, the county of Saratoga promises to pay, at the Saratoga county treasurer's office, on the 15th day of February, 1876, Hiram Parker, or bearer, six thousand dollars, at 7 per cent interest, for value received.

" $6,000.                              " HENRY A. MANN,
                                              " *Treasurer.*"

The other note was similar, save in amount. They were given in part for cash borrowed by the county treasurer at the time and in part to take up other notes of similar form and character which matured at the date of said notes.

The further material facts are stated in the opinion

*Charles S. Lester* for appellant. A county is a local organization created by the State for the purposes of civil administration, and has no corporate powers except such as are specially conferred by statute. (19 J. R., 259; *Board of Supervisors* v. *Ellis,* 59 N. Y. 624; Dillon on Municipal Corporations, § 10; *People ex rel. Hadley* v. *Albany Co.,* 28 How. Pr. Rep. 22; approved, 78 N. Y. 622; *People* v. *Lawrence,* 6 Hill, 254.) Chapter 8 of the Laws of 1864 was a re-enactment in part, and a supplementary amendment of chapter 15 of the Laws of 1863, and took the place of it. It contains a comprehensive plan providing for past liabilities and future loans and is, therefore, an implied repeal of all former laws on the same subject. (Potter's Dwarris, 156; *Dash* v. *Van Kleeck,* 7 John. 497.) The scheme of the board of supervisors, in assuming to create bounty debts owing by the individual towns, was void in not having been authorized by the bounty acts or by any statute, and therefore did not create a debt owing by any individual town. (*Magee* v. *Cutler,* 43 Barb. 239; *Faulkner* v. *Metcalf,* id. 255; *People* v. *Livingston Co.,* id. 298; 34 N. Y. 516.) The statements of the treasurer to the effect that the limit of the obligations had not been exceeded would be no more binding on the corporation than would the act of the officer in the issue. (*Supervisors* v. *Seabury,* 11 Abb. [N. C.], 466.) Even a *bona fide* holder is bound to prove affirmatively that all the conditions exist necessary to authorize the creation of a liability against a municipality and the municipality is not bound by the representations of its officers upon the face of the obligations. The burden of proving these facts rests upon the party seeking to enforce the obligations. (*Craig* v. *Town of Andes,* 93 N. Y. 405; *Starin* v. *Town of Genoa,* 23 id. 439;

*Town of Venice* v. *Woodruff*, 62 id. 462, 465; *Dodge* v. *County of Platte*, 82 id. 218; *People* v. *Mead*, 36 id. 224; *Gelpecke* v. *City of Dubuque*, 1 Wall. 203; *Cagwin* v. *Town of Hancock*, 84 N. Y. 532; *Town of Lyons* v. *Chamberlain*, 89 id. 586; *Moore* v. *Mayor, etc.*, 73 id. 238; *McDonald* v. *Mayor, etc.*, 68 id. 23; *Donovan* v. *Mayor, etc.*, 33 id. 291; *Smith* v. *City of Newburgh*, 77 id. 130; *Peck* v. *Burr*, 10 id. 294; *People* v. *Cartwright*, 9 Hun, 159; *Matter of Manhattan R. R. Co.*, 5 Eastern Rep. 90; Dillon on Municipal Corporations [3d ed.], § 445; Story on Agency [9th ed.], § 307; *Parr* v. *Village of Greenbush*, 72 N. Y. 463; *McDonald* v. *Mayor, etc.*, 68 id. 23; *Brady* v. *City of New York*, 20 id. 312; *Donovan* v. *City of New York*, 33 id. 291; *Lee* v. *Munroe*, 7 Cranch, 366, 368; *The Floyd Acceptances*, 7 Wal. 666, 680; *Whiteside* v. *United States*, 93 U. S. 257; *Board of Supervisors* v. *Ellis*, 59 N. Y. 625.) Where a municipal corporation authorizes an officer to issue obligations to a definite amount, and such officer issues obligations to a larger amount, the excess is void, even in the hands of *bona fide* holders, for value. (*Savings Bank* v. *Winchester*, 8 Allen, 109; cited with approval, 68 N. Y. 27; *Mussey* v. *Beecher*, 3 Cushing, 511; *Supervisors of Rensselaer County* v. *Bates*, 17 N. Y. 242; *Hart* v. *Bulkley*, 2 Edw. Ch. Rep. 70; *People* v. *City Bank of Rochester*, 93 N. Y. 582; *Gray* v. *Supervisors*, 26 Hun, 265; *Ætna N. Bank* v. *Fourth N. Bank*, 46 N. Y. 82; *Everson* v. *City of Syracuse*, 100 id. 577; *Briggs* v. *Central N. Bank*, 89 id. 182; *People* v. *Merchants & M. Bank*, 78 id. 269; *Marsh* v. *Oneida Central Bank*, 34 Barb. 298; *Commercial Bank* v. *Hughes*, 17 Wend. 94.) As plaintiff knew he was dealing with special agents he was bound to know the extent of their authority. (*Delafield* v. *State of Illinois*, 2 Hill, 174; *James* v. *Hackley*, 16 John. Rep. 273; *Beach* v. *Endress*, 51 Barb. 570; *Muldon* v. *Whitlock*, 1 Cowen, 308; *Reed* v. *Whyte*, 5 Esp. 122; *Cheever* v. *Smith*, 15 John. 276; *Davis* v. *Allen*, 3 Comst. 170; *Chemung Canal Bank* v. *Supervisors of Chemung Co.*, 5 Denio, 517.) Even if chapter 8 of

1864 authorized counties to borrow money they could only contract in the mode pointed out by that statute. (Dillon on Municipal Corporations, § 373; *Head* v. *Providence Ins. Co.*, 2 Cranch, 127; *Parr* v. *Village of Greenbush*, 72 N. Y. 463, 472.) The county had no power or authority to borrow money, or to issue paper similar to that set out in the indictment. (*Supervisors* v. *Weed*, 35 Barb. 136, 142; *Chemung Bank* v. *Supervisors*, 5 Den. 517, 523; *People* v. *Mitchell*, 35 N. Y. 552; *Thompson* v. *Lee Co.*, 3 Wall. 330; *Marsh* v. *Fulton Co.*, 10 id. 676; *Police Jury* v. *Britton*, 15 id. 566, 570; *Van Alstyne* v. *Freday*, 41 N. Y. 174; *Barker* v. *Loomis*, 6 Hill, 463; *Mather* v. *Crawford*, 36 Barb. 564; *People* v. *Lawrence*, 6 Hill, 245; 15 Hun, 167.) Boards of supervisors and the county treasurer being public officers of limited powers cannot by any neglect, omission of duty, unfaithfulness or malfeasance impair the rights of, or extend the liability of the county. (*Supervisors of Monroe* v. *Otis*, 62 N. Y. 88; *Looney* v. *Hughes*, 26 id. 514–519; Dillon on Municipal Corporations, § 772; *Mayor of New York* v. *Bailey*, 2 Denio, 448; *United States* v. *Kirkpatrick*, 9 Wheaton, 735; *Dox* v. *The Postmaster-General*, 1 Peters, 325; *United States* v. *Nicholl*, 12 Wheat. 505; *Jones* v. *United States*, 18 Wallace, 662; *People* v. *Russell*, 4 Wend. 570; *United States* v. *Van Zandt*, 11 Wheat. 184; *Hamilton County* v. *Mighels*, 7 Ohio, 109; *De Grauw* v. *Supervisors*, 13 Hun, 381; *Ham* v. *City of New York*, 70 N. Y. 459; *Tone* v. *Mayor, etc.*, id. 157.) After January 1, 1880, interest could only be allowed at the rate of six per cent. (*Sanders* v. *Lake Shore & Mich. S. R. R.*, 94 N. Y. 641; *O'Brien* v. *Young*, 95 id. 428.)

*A. Pond* for appellant. There being no valid town debt for bounty purposes the board of supervisors had no power under the bounty acts, or either of them, to pass any resolution empowering the county treasurer, or anybody else, either to extend or pay them. (Dillon on Municipal Corporations, §§ 421, 354; *Matter of Second Ave.* 66 N. Y. 395, 398;

*Ashley's Appeal,* 4 Pick. 21; *State Chamberlain* v. *Mayor, etc.,* 38 N. J. [Law], 110, 113; *People* v. *Otis,* 90 N. Y. 48, 53; *People* v. *Ames,* 19 How. 551, 557; *People* v. *Supervisors of Schenectady,* 35 Barb. 408, 418; *People* v. *Stocking,* 50 id. 573, 581; *Western R. R. Co.* v. *Bayne,* 11 Hun, 166; *Hall* v. *Lauderdale,* 46 N. Y. 70; *Edwards* v. *Watertown,* 24 Hun, 426.) The law, as well as public policy, absolutely forbids that the board of supervisors should abdicate its own legislative and judicial power and functions in respect to any class of claims presented against the county for audit and allowance, and delegate the same to an agent like Mann t perform. (*People* v. *Livingston County,* 26 Barb. 118; *People* v. *Stocking,* 50 id. 573; *People* v. *Supervisors,* 67 N. Y. 109; *Supervisors* v. *Wandall,* 6 Lans. 33, 38; S. C. affirmed, 59 N. Y. 645; 1 Dillon on Mun. Corp. §§ 96, 97; *Birdsall* v. *Clark,* 73 N. Y. 73; *Lyon* v. *Jerome,* 26 Wend. 485; *Bellinger* v. *Gray,* 51 N. Y. 618; *Davis* v. *Reed,* 65 id. 566; *Merritt* v. *Portchester,* 29 Hun, 619; *People* v. *Supervisors,* 25 id. 131; *Board of Excise* v. *Sackrider,* 35 N. Y. 154; *Anderson* v. *Eq. Gas Light,* 19 Week. Dig. 471.) It is well settled that a public agent or the agent of a municipality cannot extend or add to his own authority by false representations in respect to its extent or its existence, and third persons, if they act upon such false representations of the agent, do so at their peril. (Story on Agency, §§ 307, 133; 1 Dillon on Mun. Cor. §§ 445, 447, *n.*; *Lee* v. *Munroe,* 7 Cranch, 366; *Board* v. *Ellis,* 59 N. Y. 625; *Board* v. *Bates,* 17 id. 242, 247; *Swift* v. *Williamsburgh,* 24 Barb. 427, 432; *Lowell Bank* v. *Winchester,* 8 Allen, 109; *Benoit* v. *Inh. of Conway,* 10 id. 528; *Baltimore* v. *Eshback,* 18 Md. 276; *Mayor, etc.,* v. *Musgrove,* 48 id. 272; *Whiteside* v. *United States,* 93 U. S. 247, 257; *People* v. *The State,* 67 Ill. 435, 438; *Bouton* v. *Board,* 74 id. 384, 395; *Craig* v. *Andes,* 93 N. Y. 405; *Chapleo* v. *Brunswick Build. Soc.,* 29 Eng. (Moak) 781, 796.) The rule is the same as to a private special agent. He cannot extend his own authority and thereby bind his principal by his own false representations in respect

thereto. (Story on Agency, § 133; *Gibson* v. *Colt*, 7 J. R. 390; *Mussey* v. *Beecher*, 3 Cush. 511; *Stollenwork* v. *Thatcher*, 115 Mass. 221, 227; *Bumpstead* v. *Hoadley*, 11 Hun, 487; *Griswold* v. *Perry*, 7 Lans. 98; *Marvin* v. *Wilbur*, 52 N. Y. 270; *Martin* v. *Farnsworth*, 49 id. 555.) The board of supervisors who made Mann its agent was not the county, but were merely other special agents of the county possessing but special and limited powers, and among those powers was not the power to confer on an agent, of their own appointment, greater power than they possessed themselves. (*Chemung Co. Bank* v. *Supervisors*, 5 Den. 517, 522; *Supervisors* v. *Weed*, 35 Barr. 136, 142; *People* v. *Mitchell*, 35 N. Y. 551; *Baker* v. *Loomis*, 6 Hill, 463; *Matter of Crawford*, 36 Barb. 564; *Van Alstyne*, v. *Freday*, 41 N. Y. 174; 1 Rev. St. at Large, p. 337, § 2; *Morris & Essex R. R. Co.* v. *Sussex R. R. Co.*, 20 N. J. [Eq.] 542; 1 Dillon on Mun. Cor. §§ 445, 447, *n*; *Donovan* v. *Mayor, etc.*, 33 N. Y. 291, 293; *McDonald* v. *Mayor, etc.*, 68 id. 23; *Dickinson* v. *Poughkeepsie*, 75 id. 65, 74; *Parr* v. *Greenbush*, 72 id. 463, 472; *Smith* v. *Newburgh*, 77 id. 130, 136; *Weismer* v. *Douglass*, 64 id. 91, 105; *Craig* v. *Andes*, 93 id. 405; *Board of Supervisors* v. *Otis*, 62 id. 88; *Horton* v. *Thompson*, 71 id. 513, 525; *Kingsland* v. *Mayor, etc.*, 5 Daly, 418; *Alexander* v. *Cauldwell*, 83 N. Y. 480; *Davis* v. *Old Col. R. R. Co.*, 131 Mass. 258.) The county being a public corporation, could not be estopped, by the act of its agent, or officer or its board in excess of his and their authority. (*Supervisors* v. *Wandell*, 6 Lans. 33; affirmed, 59 N. Y. 645; *Ford* v. *Mayor, etc.*, 4 Hun, 587; affirmed, 63 N. Y. 640; *Supervisors* v. *Ellis*, 59 id. 620; *Supervisors* v. *Ovis*, 62 id. 88, 92; *Weismer* v. *Douglass*, 64 id. 91; *Benoit* v. *Inh. of Conway*, 10 Allen, 528; *Lee* v. *Munroe*, 7 Cranch, 366; *People* v. *Brown*, 67 Ill. 425.) Mann's acts in making the notes constituted no representation at all that the facts existed necessary to the existence of the power in Mann to make them, so as to estop the defendant in this case from denying their existence, because, as the judge has found, the

fact to be, there was then no town bounty debt owing by any town, to be extended. (*Horton* v. *Thompson*, 71 N. Y. 513, 523; *Dodge* v. *County of Platte*, 82 id. 218; *McClure* v. *Oxford*, 4 Otto, 429; *Barnes* v. *Lacon*, 84 Ill. 461; *People* v. *Board, etc.*, 34 N. Y. 516, 518; *People* v. *Board, etc.*, 34 id. 516; S. C. 43 Barb. 298, 302; *Faulkner* v. *Metcalf*, id. 255, *note*; *Magee* v. *Cutler*, id. 239, 254; 1 Dillon on Mun. Cor. § 421 [354]; *Matter of Second Av.* 66 N. Y. 395, 398; *People* v. *Otis*, 90 id. 48, 53; *State* v. *Chamberlain*, 38 N. J. [Law], 110, 113: *Joslyn* v. *Dow*, 19 Hun, 494, 497; 4 Pick. 21.) The annual resolutions of the supervisors did not authorize Mann to borrow any money on the credit of the county or to give any promissory notes binding on the county therefor, nor did they authorize him to borrow or extend after he had once extended or borrowed to the extent of the debts so desired to be extended. (*Bonnell* v. *Griswold*, 89 N. Y. 122, 127; *Schwinger* v. *Raymond*, 83 id. 192; *In re Second Av.* 66 id. 395, 398; *People ex rel. N. Y. & C. R. R. Co.* v. *Hutton*, 18 Hun, 116, 120; Paley on Agency, 202; 2 Kent's Com. 620; Story on Agency § 126; *Batty* v. *Carswell*, 2 J. R. 48; *Davenport* v. *Buckland*, Hill and Den. 75; *Mixon* v. *Palmer*, 4 Sel. 498; *Olyphant* v. *McNair*, 41 Barb. 446; *People* v. *Bostwick*, id. 9, 25; *Bush* v. *Cole*, 28 N. Y. 261, 269; *Scott* v. *McGrath*, 7 Barb. 53; *Cagwin* v. *Town of Hancock*, 84 N. Y. 532, 542; *Martin* v. *Farnsworth*, 49 id. 555, 558, 561; *Doubleday* v. *Kress*, 50 id. 410, 415; *Rossiter* v. *Rossiter*, 8 Wend. 494; Dunlap's Paley on Agency, 192; *Atwood* v. *Maning*, 7 B. & C. 278; *Ferrira* v. *Depew*, 17 How. 418; *Hackettstown* v. *Swackhamer*, 37 N. J. [Law], 194; *Bank of Indiana* v. *Buckbee*, 3 Keyes, 461; *Martin* v. *Peters*, 4 Rob. 434; *Hawtayne* v. *Bourne*, 7 Mees. and Wels. 595; *Supervisors* v. *Deyoe*, 77 N. Y. 221; *Horton* v. *Thompson* 71 N. Y. 513, 525; *Dodge* v. *County of Platte*, 82 id. 218; *Barnes* v. *Lacon*, 84 Ill. 461; *McClure* v. *Oxford*, 4 Otto, 429.) Mann had no authority to give any promissory note, binding on the county, to Parker, because the resolution con-

ferred no express authority upon him to that effect or said anything upon that subject, and none such can be implied. (*Rossiter* v. *Rossiter*, 8 Wend. 494; *Lawrence* v. *Gebbard*, 41 Barb. 575; *Holtsinger* v. *Nat. Com. Ex. Bk.* 37 How. 203; *Robinson* v. *Chemical Bk.* 96 N. Y. 404, 407; *Paige* v. *Stone*, 10 Metc. 160; *Hazeltine* v. *Miller*, 44 Me. 177, 180; *N. Y. Iron Mines* v. *First Nat. Bk.*, 39 Mich. 644; *Spooner* v. *Thompson*, 48 Vt. 259, 264; *Hills* v. *Upton*, 24 La. Ann. 427; *Webber* v. *President of Williams College*, 23 Pick. 302; *Supervisors* v. *Deyoe*, 77 N. Y. 221; 1 Bouv. Inst. 310.) The opinion of Mann as to the character of the debt is wholly insufficient to warrant a judgment in favor of the plaintiff thereon against the county. (*People* v. *Greene*, 5 T. and C. 376.) The board of supervisors could be made liable for Mann's acts in doing only what the resolutions authorized, and not otherwise. (*Everson* v. *Syracuse*, 100 N. Y. 577; *Merritt* v. *Read*, 5 Denio, 352; *Van Rensselaer* v. *Kidd*, 2 Sel. 331; *Second Ave. R. R. Co.* v. *Mehrbach*, 17 J. & S. 267.) The supervisor did not represent the town, in respect to its war indebtedness, and this whole scheme, which Mann was appointed to carry out, was void. (*People* v. *Board, etc.*, 34 N. Y. 516; S. C. 43 Barb. 298, 302; *Faulkner* v. *Metcalf* id. 255, *note*; *Magee* v. *Cutler*, id. 239, 254.) Only six per cent was allowable since January, 1880, on contracts maturing before that time. (*Bennett* v. *Bates*, 94 N. Y. 354; *Sanders* v. *R. R. Co.*, id. 641; *O'Brien* v. *Young*, 95 id. 428.)

*Lemuel B. Pike* for respondents. The county of Saratoga had power to borrow money for the purposes of paying bounties, and the incidents of putting down the rebellion. (Laws of 1864, chap. 8, § 22; Laws of 1863, chap. 15, § 6.) Those statutes were made *pro bono publico*, and such a statute shall be construed in such manner that may, as far as possible, attain the end proposed, although it carries it to another subject not, by words, included in the act. (Potter's Dwarris, 231, 234; id. note 19, 202.) The statute must be construed with reference to its purposes and the ends sought. (*Weed* v.

*Tucker*, 19 N. Y. 433 ; *Hendler* v. *Golden*, 36 id. 446 ) The power to renew or continue the indebtedness was complete. (Potter's Dwarris, 123, Max. vii. ; *Williamsport* v. *Commonwealth*, 84 Penn. St. 487 ; *Mayor, etc., of Griffin* v. *Inman*, 57 Ga. 370 ; *People* v. *Brennan*, 39 Barb. 523, 545 ; *Ketchum* v. *City of Buffalo*, 21 id. 294 ; *S. C.*, 14 N. Y. 356, 365 ; *Meech* v. *City of Buffalo*, 29 id. 198 ; *Tucker* v. *City of Raleigh*, 75 N. C. 267 ; *Hall* v. *Lauderdale*, 46 N. Y. 70 ; *Le Couteulx* v. *City of Buffalo*, 33 id. 333 ; R. S., part 1, chap. 12, tit. 1, art. 1, § 2.) The authority given the agent, the treasurer, to extend, carried with it the power to do those acts necessary to the attainment of the purpose. (*Hall* v. *Lauderdale*, 46 N. Y. 73 ; Story on Agency, § 97 ; *Commercial Bank* v. *Norton*, 1 Hill, 504 ; *Williams* v. *Getty*, 31 Penn. St. 464 ; *Supervisors* v. *Seabury*, 11 Abb. [N. C.] 461 ; *Jagger Iron Co.* v. *Walker*, 76 N. Y. 521.) The conditions in fact existed upon which the treasurer was authorized to make the loan, to wit, request of the towns to have debts extended, and, in the absence of proof, the county having the power ; and, so far as the county is concerned, every act being within its power, the legal presumption is that the condition existed, and that the obligations were made for a proper consideration, and the agent had the power to make them. (*Belmont* v. *Coleman*, 1 Bosw. 188 ; *Nelson* v. *Eaton*, 26 N. Y. 414, 415 ; *Farmers' Loan & Trust Co.* v. *Curtis*, 7 id. 466 ; *De Groff* v. *American Linen Thread Co*, 21 id. 124 ; *Mutual Benefit Life Ins. Co.* v. *Davis*, 12 id. 569 ; *Farmers' Loan & Trust Co.* v. *Clowes*, 3 id. 470 ; *Partridge* v. *Badger*, 25 Barb. 146.) There is no difference between municipal and other corporations once the power established. (*Lee* v. *Village of Sandy Hill*, 40 N. Y. 442 ; *N. Y. & B. S. M. & L. Co.* v. *Brooklyn*, 71 id. 584.) The presumption is the officer did his duty. (*Jackson* v. *Marsh*, 6 Cow. 281.) The suggestion that the authority given was to extend a town bounty debt is fallacious. There was no town bounty debt as between the creditor and the county. It was a county debt. (*People* v *Supervisors of Livingston*, 34 N. Y. 516, 522 ;

*Magee* v. *Cutler*, 43 Barb. 253.)  The objection that the power was judicial and, therefore, could not be exercised by the treasurer, is not well founded.  The county could act only through such an agent, or the board of supervisors sitting in continual session, to pass upon every loan.  (*People* v. *Supervisors of Livingston*, 34 N. Y. 516, 522; 43 id. 398; *Hall* v. *Lauderdale*, 46 id. 70; *Magee* v. *Cutler*, 43 Barb. 240; *Faulkner* v. *Metcalf*, id. 258n.; *People* v. *Supervisors of Columbia*, 43 N. Y. 130; *Moore* v. *Mayor, etc.*, 73 id. 239.) The county obligations were valid in whatever form they were given for this debt.  (*People* v. *Supervisors of Livingston*, 34 N. Y. 522; 6 Week. Dig. 370; *People* v. *Mead*, 24 N. Y. 114; *Kelly* v. *McCormick*, 28 id. 318, 323; *Mott* v. *Hicks*, 1 Cow. 513; *Phelps* v. *Yates*, 16 Blatch. 192; 68 Maine, 160; 6 Otto, 312; *Town of Solon* v. *Williamsburgh Savings Bank*, 35 Hun, 1; *Gerwig* v. *Sitterly*, 56 N. Y. 214; *Oneida Bank* v. *Ontario Bank*, 21 id. 490; *People* v. *Brennan*, 39 Barb. 544; *Moss* v. *Averill*, 10 N. Y. 457; *Kelly* v. *Mayor, etc.*, 4 Hill, 263; *Williamsport* v. *Commonwealth*, 84 Penn. St. 487; *Ketchum* v. *City of Buffalo*, 14 N. Y. 375, 376; *Moss* v. *Oakley*, 2 Hill, 265; *Newman* v. *Supervisors*, 45 N. Y. 686–688; *Kelly* v. *Mayor, etc.*, 4 Hill, 263; *City of Galena* v. *Commonwealth*, 48 Ill. 423; *Ryan* v. *Lynch*, 68 id. 160.)  The supervisors ratified every act of the treasurer prior to 1875, as to the manner of executing his agency.  A municipal corporation can ratify an act it could originally authorize.  (*City of Shawneetown* v. *Baker*, 85 Ill. 564; *Peterson* v. *Mayor, etc.*, 17 N. Y. 453; *People* v. *Flagg*, 17 id 586; 40 Barb. 256; *Brady* v. *Mayor, etc.*, 1 Barb. 584; Story on Agency, §§ 244, 254, 255; *Hoyt* v. *Thompson*, 19 N. Y. 208; *Supervisors* v. *Seabury*, 11 Abb. [N. C.] 461; *Brown* v. *Mayor, etc.*, 63 N. Y. 244; *People* v. *Supervisors*, 68 id. 119.)  The county having permitted the treasurer to transact its business in this manner, and having approved his acts, was an authority to him to continue the manner, and justified parties in dealing with him in that manner.  (Story on Agency, §§ 89, 260; *Calhoun* v. *Delhi R. R. Co.*, 28 Hun, 379, 402.)  The defend-

ant is estopped from denying that the notes and bonds in suit are not valid ; the apparent is the real authority of the agent. (*N. Y. & N. H. R. R. Co.* v. *Schuyler*, 34 N. Y. 30 ; *Merchants' Bank* v. *Griswold*, 72 id. 472.) Where a power exists there is no difference between a corporation, municipal or otherwise, and an individual. (*Lee* v. *Sandy Hill*, 40 N. Y. 442, 447, 448 ; *N. Y. & B. S. M. & L. Co.* v. *Brooklyn*, 71 id. 584 ; *Calhoun* v. *Delhi R. R. Co* , 28 Hun, 399 ; *People* v. *Ingersoll*, 58 N. Y. 28, 29.) A municipal corporation may be estopped. (*Gifford* v. *Town of White Plains*, 25 Hun, 606 ; *Curnen* v. *Mayor, etc.*, 79 N. Y. 511, 514, 515 ; *O' Leary* v. *Board of Education*, 93 id. 5 ; *Calhoun* v. *Delhi R. R. Co.*, 28 Hun, 399 ; *Davis* v. *Mayor, etc.*, 93 N. Y. 250 ; *Sharp* v. *Mayor*, 40 Barb. 256 ; *Moore* v. *Mayor, etc.*, 73 N. Y. 238, 246 ; *People* v. *Stephens*, 71 id. 560 ; *Gould* v. *Town of Oneonta*, 71 id. 298 ; *Town of Lyons* v. *Chamberlain*, 89 id. 586, 587 ; *People* v. *Mead*, 24 id. 114 ; *Neeley* v. *Yorkville*, 10 Rich ; S. C. 152, 143 ; *Belo* v. *Commissioners of Forsyth Co.*, 76 N. C. Rep. 489 ; *De Voss* v. *City of Richmond*, 8 Gratt. 338 ; *County of Davies* v. *Hindekoper*, 19 Alb. Law Jour. 201 ; *Hackett* v. *City of Ottawa*, 19 id. 317 ; *City of Chicago* v. *Turner*, 80 Ill. 419 ; *Supervisors* v. *City of Lincoln*, 81 id. 156 ; *City of Cincinnatti* v. *Cameron*, 33 Ohio, 336 ; *McPherson* v. *Foster*, 43 Iowa, 64 ; *Schunner* v. *Seymour*, 24 N. J. Eq. 155 ; *Kneeland* v. *Gilman*, 24 Wis. 42 ; *San Antonio* v. *Meheffy*, 6 Otto, 312 ; *Rogers* v. *Burlington*, 3 Wall. 654 ; *Deming* v. *Houghton*, 64 Me. 264 ; *Sternes* v. *Franklin*, 48 Mo. 167 ; *Alvord* v. *Syracuse Sav. Bank*, 98 N. Y. 600 ; *Bissell* v. *M. S. R. R. Co.*, 22 id. 258 ; *Newman's Case*, 45 id. 686 ; *Lee* v. *Village of Sandy Hill*, 40 N. Y. 447, 448.) A party dealing with a municipal corporation must see to it that the power exists, and there his duty ends. (*Belo* v. *Commissioners of Forsyth Co.*, 76 N. C. Rep. 489 ; 7 Otto, 272 ; *Orleans* v. *Platt*, 9 id, 682 ; *Com'rs* v. *Bolles*, 94 U. S. 104 ; *Dodge* v. *County of Platte*, 82 N. Y. 230 ; *Starin* v. *Town of Genoa*, 23 id. 463 ; *Town of Springport* v. *Teutonia Savings Bank*, 75 id. 406.) The treasurer, if he received enough from taxes

to pay the indebtedness, must have misappropriated it. His misappropriation is chargeable to the county, and the county must raise the money again in some manner. (*Chemung Canal Bank* v. *Supervisors,* 5 Denio, 522, 523; *Bassett* v. *State of Ohio,* 26 Ohio R. 543; *People* v. *Comptroller,* 77 N. Y. 45; *Federgreen* v. *Town of Fallsburgh,* 25 Hun, 152; *Ketchum* v. *City of Buffalo,* 14 N. Y. 363–366; 87 id. 628; 98 Ill. 94.) The giving of the new obligations, if they were void, did not extinguish the debt. (43 N. Y. 159; 65 Barb. 303; 27 How. 111; 58 N. Y. 350; 46 id. 76; 5 Denio, 517; 13 Wend. 101; 11 id. 9; 15 Johns. 475; *Jagger Iron Co.* v. *Walker,* 76 N. Y. 521.) The notes in question, if they were void as obligations, were still valid to extend the debt, so far as to prevent the statute of limitations running under section 395, Code of Civil Procedure. (*In re Consalus,* 95 N. Y. 340; *City National Bank of Poughkeepsie* v. *Phelps,* 86 N. Y. 484; *Smith* v. *Ryan,* 66 id. 352; *Kelly* v. *Webber,* 27 Hun, 8; *Harper* v. *Fairley,* 53 N. Y. 442; *Shoemaker* v. *Benedict,* 11 id. 185; *People* v. *Ingersoll,* 58 id. 1; *Huff* v. *Knapp,* 5 id. 66, 67; *People* v. *Stout,* 23 Barb. 346; *People* v. *New York,* 5 Cow. 336.) The obligations in suit were such as need not have been presented to the board of supervisors, for audit. (1 R. S. [Bank's 6th ed.] 929, § 10; *Blake* v. *Supervisors,* 61 Barb. 149; *Chemung Bank* v. *Supervisors,* 5 Denio, 517; *Backer* v. *Supervisors,* 3 Week. Dig. 293; *Marsh* v. *Town of Little Valley,* 1 Hun, 554; *S. C.,* 64 N. Y. 112; *People* v. *Hawkins,* 46 id. 9; *Newman* v. *Supervisors,* 45 id. 686; *Bridges* v. *Supervisors,* 92 id. 570; *Hathaway* v. *Town of Homer,* 5 Lans. 267; *Federgreen* v. *Town of Fallsburgh,* 25 Hun, 152; *Hill* v. *Supervisors,* 12 N. Y. 52; *People* v. *Thompson,* 25 Barb. 73; *Brown* v. *Town of Canton,* 4 Lans. 409; approved, 64 N. Y. 115.) An action is the proper remedy; a *mandamus* will not lie because there is a proper legal remedy. (64 N. Y. 112; 46 id. 9; 61 Barb. 149; 2 Hill, 45; 92 N. Y. 580.) The bonds, notes and instruments being within the power of the county, even if improperly issued by the treasurer, were negotiable

instruments, and in the hands of a *bona fide* transferee for value, are binding on the county. (*Bank of Rome* v. *Village of Rome*, 19 N. Y. 20; *Brainard* v. *N. Y. & H. R. R. Co.*, 25 id. 495, 500; *Lindsley* v. *Diefendorf*, 43 How. 357; *People* v. *Mead*, 24 N. Y. 114; *Delafield* v. *Illinois*, 2 Hill, 159; 26 Wend. 191; *Blake* v. *Supervisors*, 61 Barb. 149; *Bissell* v. *M. S. R. R. Co.*, 22 N. Y. 290; 84 Penn. St. 487; 24 Am. R. 208; 13 Blatch. 424, 246; 12 id. 539; 12 Wheat. 70; 11 Otto, 494; 1 Wall. 83, 175, 384; 5 id. 784· 15 id. 358; 14 id. 252; 19 Alb. Law Jour. 201, 317.)

ANDREWS, J.   The county of Saratoga after the close of the war and in November, 1865, was indebted in the sum of about $618,000 for money borrowed on the credit of the county to pay bounties to volunteers, the expenses of their enlistment, and for the support of their families. The debt was represented by notes of the county, signed by Henry·A. Mann, as county treasurer, and by unsealed instruments in the form of bonds, executed in behalf of the county by the chairman of the board of supervisors and by Mann as treasurer. It was divided into two classes, the county bounty debt (so-called), amounting to $138,400, which had its origin in a resolution of the board of supervisors, passed in December, 1864; which provided for the payment of a county bounty to volunteers who should thereafter enlist in the military or naval service of the United States and be credited to any town of the county upon its quota, and the town county debt (so-called), amounting to about $480,525, which was incurred in pursuance of a policy initiated by a resolution of the board, passed December 18, 1863, which authorized the borrowing of money on the credit of the county for the payment of bounties to volunteers, to be disbursed on the orders of the supervisors of the respective towns, and which also provided, in substance, that the amount drawn by the supervisors of the towns, respectively, should constitute a town debt of the town drawing the same, payable by taxation upon its property. This large debt confronted the

board of supervisors at its annual meeting in November, 1865. Most of the money had been borrowed on short terms of credit and many of the obligations given therefor would fall due on the fifteenth of the succeeding February, and it was necessary to provide for their payment or for the extension of the debt. The so-called town bounty debt forming the bulk of the indebtedness, first received the consideration of the board, and on November twenty-second the board passed a resolution as follows: "*Resolved*, That the county treasurer be directed to procure an extension of the time of payment of such portion of the old county debt incurred prior to December, 1864, as the several towns owing the same may desire extended, and the expenses and interest upon the same be chargeable to the several towns, respectively, desiring such extension." On the twenty-fourth of November a resolution was passed directing that the sum of $25,000 be levied on the county, to be applied on the principal and interest of the general county bounty debt, and that the treasurer procure an extension of the payment of the balance remaining due. At each subsequent annual session of the board, down to and including the year 1874, a resolution was passed in substance like the resolution of November 22, 1865, authorizing the treasurer to extend such part of the town bounty debt as the towns owing the same should desire. The plan thus adopted by the board in 1865, and continued to 1875, for the gradual payment and final extinguishment of the town bounty debt, was, as has been shown, to levy a part of the debt each year by tax upon the respective towns, and to extend the remainder, the manifest intention being that the amount levied in any year and the amount of the debt extended and unpaid in the same year, should together precisely equal the whole amount of tne debt. In each year the board of supervisors levied on the respective towns a tax for the payment of a portion of the town bounty debt, and in each year, also, the respective supervisors requested the treasurer to extend the amount unpaid, not provided for in the levy of that year. In

respect to the county bounty debt a somewhat similar policy was pursued.   In November, 1866, the board of supervisors authorized the treasurer to borrow on the credit of the county $60,000, to apply thereon.   The debt was then $165,322.99, having been increased from the previous year. In 1867, the board passed a resolution that the county bounty debt be paid in six equal annual installments, the first payment to be made February 15, 1869, and authorizing the treasurer " to extend the time of payment of the present indebtedness and to borrow money on the credit of the county in cases where such indebtedness cannot be extended, in such sums and for such time as is necessary to carry out the provisions of this resolution."   The treasurer assumed to exercise the authority to extend the debt under the annual resolutions of the board of supervisors, by borrowing money to pay maturing obligations and giving notes of the county therefor, signed by him as treasurer, and in other cases by giving new obligations to creditors, taking up the old notes or bonds.   It was proved and is found that if the treasurer had honestly applied the money raised by taxation for the payment of the bounty debt, to that object, extending only the actual, valid indebtedness, the whole debt would have been paid before the meeting of the board of supervisors in the fall of 1874, excepting about the sum of $20,800.   The usual resolution for an extension was passed by the board of supervisors at the November session in that year.   Mann was treasurer of the county from January 1, 1861, to December 31, 1875.   It was ascertained soon after he left the office that notes of the county, signed by him as treasurer, being more than seventy-five in number and amounting in the aggregate to $138,631, and issued between February 15, and August 5, 1875, were outstanding, making the apparent debt of the county $118,000 greater than the actual debt, if the money raised had been honestly applied.   In other words, there was a fraudulent over-issue by Mann of notes to the amount of $118,000.   Among those outstanding notes were two notes held by the plaintiffs' intestate, of $6,000 and $7,000, respectively, dated February

15, 1875, payable February 15, 1876.  The consideration of those notes was money loaned by the plaintiff's intestate to Mann as treasurer, for the use of the county and for accrued interest on deferred payments.  The loans were principally made in 1864, 1866, 1868 and 1869, and new notes were given on or about the fifteenth of February in each year until 1875, in renewal of the notes maturing at that date, and on taking the new notes the old notes were delivered by the intestate to Mann.

The general question relates to the liability of the county of Saratoga for the loans made by the intestate to Mann as treasurer. The *bona fides* of Parker, the intestate, is not questioned. The liability of the county for the loans made by Parker is challenged and denied in the first place, on the ground that the county had no legal capacity to borrow the money loaned by him, or to execute notes or obligations for its payment. It is not denied that authority was conferred upon the board of supervisors by the statutes, chapter 8 and chapter 72, of the Laws of 1864, and chapter 41 of the Laws of 1865, to borrow money on the credit of the county to pay bounties to volunteers and for other purposes mentioned in those statutes, and to execute obligations for its payment.  The claim is that the power conferred by those statutes was exhausted when once exercised and that after the debt had been created, the statute did not authorize a new borrowing to pay or extend the debt, or the issuing of new obligations in renewal of the primary ones.  No power, it is claimed then remained in the board of supervisors except to provide by taxation for the payment of the debt at its maturity.  If this claim was well founded it would not render invalid the loans made by Parker in 1864. They were precisely within the terms of the power conferred by the statute referred to, as construed by the defendant, and if the notes subsequently taken by Parker were invalid, the obligation of the county to repay the money borrowed would still remain and could be enforced, unless the remedy is barred by the statute of limitations.  The loans made subsequent to 1864 would not stand upon the same foundation. , But in

respect to such loans, if the money borrowed came to the use of the county and was actually applied in payment of its valid indebtedness, we are not prepared to say that there would be no remedy. The fact that the defendant is a county, forming one of the political divisions of the State and organized for public purposes, would not seem to be a sufficient reason for releasing it from the ordinary obligations of justice and equity, or for permitting it to retain the benefit of the loans, and at the same time repudiate any obligation for their payment. The contention that boards of supervisors have no inherent power to borrow money or to issue negotiable paper, accords with the general understanding and with the tenor of the adjudged cases, and the course of legislation, which presupposes the necessity of express legislative sanction, in order to justify the exercise of this authority. (See *Chemung Canal Bank* v. *Supervisors*, 5 Denio, 517, 524 ; *Brady* v. *Supervisors*, 10 N. Y. 260 ; *Starin* v. *Genoa*, 23 id. 439, 449 ; *Lynde* v. *County*, 16 Wall. 6 ; 7 Dill. Mun. Corp. [3d ed.], § 507.) In this State the powers of boards of supervisors are not only the subject of express affirmative definition, but for the purpose of confining the action of these bodies to the exercise of enumerated powers, it is declared that " no county shall possess or exercise any corporate power, except such as are enumerated or shall be specially given by law, or shall be necessary to the exercise of the powers so enumerated or given." (1 R. S. 364, § 2.) The power of borrowing money is incident to the powers of a business corporation, unless excluded by its charter. (*Curtis* v. *Leavitt*, 15 N. Y. 9.) Boards of supervisors have the recourse of taxation for the raising of money for county purposes. The power to borrow money is not necessary to the execution of powers expressly given. But the denial of this power to those *quasi* public corporations also stands strongly upon considerations of public policy, and the doctrine that they have no implied power to borrow money is an important safeguard for the protection of political communities against the creation of ruinous liabilities, through the action of incapable, negligent or unfaithful public agents. We concur,

therefore, with the proposition that the power of the board of supervisors to extend the original debt by means of new loans, or by renewals of prior obligations, if it existed, must be found in the statute, given either expressly or by implication. It is a matter of general notoriety and of public history that prior to the passage of the act, chapter 8, of the Laws of 1864, which was passed February 9, 1864, large obligations had been incurred by towns and counties throughout the State, for bounties and war expenses, without authority of law. It was one of the main purposes of that act to legalize and validate these unauthorized obligations, and to provide for their audit and final payment. In many cases, pursuant to the action of town boards and boards of supervisors, bonds and notes of towns and counties had been issued to represent advances so irregularly made. The act validated and legalized these transactions, and the fifteenth section authorized the original obligations to be continued or new bonds to be given, and declared that " any bonds or other county obligations issued, or which may hereafter be issued, in renewal or continuance of any of said bonds, are hereby legalized, ratified and confirmed." The first twenty-one sections of the act are mainly, if not wholly, curative and remedial. But by the twenty-second section, for the first time in the history of the war measures enacted in this State, the legislature, contemplating the future emergencies and necessities of the government, conferred upon boards of supervisors an affirmative power to borrow money upon the credit of the county and, in a certain contingency, upon the credit of any city or town, for the payment of bounties and other incidental purposes, to be exercised at any time " during the existence of the war." It was under this statute and the supplementary statute, chapter 92, of the laws of the same year, passed March 26, 1864, that the vast debt incurred by the counties and towns in this State for the suppression of the rebellion, which was outstanding and unpaid at the close of the war, was mainly created. The main purpose of the supplementary act of March 26, 1864, apparently was to make

the powers conferred upon boards of supervisors in respect to the creation of debts for war purposes still more comprehensive than under the prior act, and to leave no possible question that the public credit and the sovereign power of taxation were pledged for their redemption. The first section commences with the declaration that every county in the State shall be liable for all moneys borrowed, or which should be borrowed in pursuance of the notes, resolutions or directions of its board of supervisors for the payment of bounties to volunteers to fill its quota under any call of the president of the United States since the 1st day of October, 1863, or under any call which should be issued after the passage of the act. Following this declaration is a clause declaring every bond, certificate or other instrument which had been or should be issued, in pursuance of the votes, resolutions or directions of a board of supervisors, for the purposes specified, to be valid. The section concludes as follows: "And such board is hereby authorized and required to perform every agreement which it has made or shall make, or which has been or shall be made in pursuance of its votes, resolutions or directions, in respect to the exchange of bonds, certificates or other instruments so issued for other bonds, certificates or instruments, or in respect to paying the money so borrowed and the interest thereon, and to cause money to be raised from time to time on the taxable property of said county, to pay the money so borrowed and the interest thereon when the same shall become payable." It is insisted, on behalf of the defendant, that the power conferred on the board of supervisors by this section, to exchange one obligation for another, is a power which can be exercised only once in respect to the same debt, and that the obligation imposed to perform every agreement it may make, in respect to the payment of money borrowed, at most, authorizes only a single borrowing to pay an original loan. We think this narrow construction of the section is unwarranted. The acts of 1864 conferred upon boards of supervisors the power to borrow money without limitation as to amount for the purposes mentioned. It cannot

reasonably be supposed that the legislature contemplated that the large sums which had been and would be required for the payment of bounties and other expenses should be paid immediately by taxation. This would have imposed a burden upon the people which could not have been borne. Nor would it naturally be supposed that the legislature, while conferring upon boards of supervisors plenary power in creating debts, would take from them all discretion in dealing with the debts so created, so as to mitigate as far as practicable the burden of taxation. This power was clearly given to boards of supervisors with respect to debts contracted before February 9, 1864, by the fifteenth section of the act of that date, and there is no apparent reason why the legislature should not invest them with the same power in respect to debts contracted after that time. The duty imposed upon boards of supervisors in the last clause of section 1 of the act of March twenty-sixth, to cause money to be raised by taxation to pay the money borrowed, "when the same shall become payable," was for the benefit and protection of the creditor, and did not, we think, operate as a limitation of the power of the supervisors previously given to enter into any agreement for the exchange of securities, or for the payment of the money borrowed, in their discretion. We are of opinion that a fair and just construction of the act of March 26, 1864, upholds the power actually assumed and exercised by the defendant, and that the board of supervisors of Saratoga county was vested with the power to borrow money and renew its obligations from time to time for the purpose of paying or continuing its indebtedness created under the acts of 1864.

Passing this question, it is further contended on behalf of the defendant that, assuming that the board of supervisors had power to borrow money to pay existing obligations, and to issue obligations of the county for the new loans, or to renew them from time to time in its discretion, the power was not delegated to the treasurer by the resolutions under which he assumed to exercise this authority. The claim is, in substance, that the power conferred on the treasurer to

"procure an extension of the time of payment" of the bounty debt, conferred upon him no authority to borrow money to pay matured obligations, or to issue notes of the county for new loans or in renewal of existing obligations. A power given by a principal to an agent to extend a debt, is not, it is said, a power to pay or extinguish it, and does not include the power of borrowing money in the name of the principal to pay the debt authorized to be extended, or to give notes therefor, although the effect of the transaction might be to give time to the principal. All that Mann was authorized to do, it is claimed, was to see the creditors of the county and procure their consent to give further time for the payment of their debts, and if they refused, his power was exhausted. He could neither make new loans to take up the paper falling due, nor could he execute new notes in renewal of existing obligations, although the creditors might be willing to accept them in exchange for the original security. The question thus presented depends upon the true construction and scope of the language of the resolutions of the board. They are to be construed in accordance with the ordinary rules of construction applicable to all written instruments, by which, in order to ascertain the intention where there is obscurity, or where the language employed may be used in different senses, or may have a broad or narrow interpretation, courts may, in aid of the interpretation, consider the attendant circumstances the situation of the parties and the object in view. In considering this question it is important to bear in mind the subject with which the board of supervisors was dealing. When the first resolution was passed, in November, 1865, the town bounty debt (so-called) amounted to nearly half a million dollars. It was represented by a large number of separate obligations held by banks and private individuals. The board of supervisors, at its annual session in November, provided for raising a certain amount by taxation, to be applied upon the bounty debt. But after applying this sum there would remain a large amount, probably not less than $100,000 of the debt, maturing February 15, 1866, for the

payment of which no provision was made by the board and no action of any kind taken in respect to it, except by the resolution directing the treasurer to procure an extension of the time of payment. The same condition existed each year and the same action was taken by the board, the amount falling due in each February, for which no tax was levied, varying from year to year, in several years approaching the sum of $100,000. It is well known that the annual meeting of the board of supervisors is held in November or December, when the annual taxes are levied. If the resolutions of the board of supervisors are subject to the narrow construction claimed by the defendant, it would follow that the board left a large debt, falling due each year between the meetings of the board, unprovided for, except in the contingency that the treasurer would be able to induce the numerous creditors by whom it was held to forbear the collection of their claims when due and consent to postpone their payment. It is certainly quite improbable that he would be able to do this in all cases. The main purpose of the resolutions was to secure further time for the payment of the part of the county debt soon to mature, not included in the tax levy. By the method adopted by the treasurer the debt was not paid, but only extended. New creditors were substituted for old ones; the debt remained the same. The supervisors, in passing the resolution, did not have in view particular individuals, who might be holders of the county obligations, but the debt as a whole; and the sole purpose of their action was to secure the continuance of the debt so as to avoid the necessity of immediate and onerous taxation. The authority is to be construed with reference to the circumstances. It may very well be that an authority from a principal to an agent to procure an extension of a single debt owing to a particular individual would not include a power in the agent to borrow money to pay it. But an authority given to a county, by the legislature, to extend its indebtedness, would, we think, fairly include the power to do it by borrowing money and substituting new obligations in place of the old

ones. It would be a usual means, in such a case, of accomplishing the authorized purpose. The board of supervisors gave a practical construction to the resolutions in their dealings with the treasurer. In each year, from 1865 to 1875, the accounts of the treasurer were audited by a committee of the board. He presented as vouchers each year notes which had been issued by him as treasurer, which on their face referred to the resolution of the year preceding that in which they were given, as his authority for issuing them. These vouchers, amounting in the aggregate during this period to several hundred thousand dollars, were accepted without objection and allowed as credits on his accounts. The inference is well nigh irresistible that the board was cognizant of the construction put by Mann upon his authority; and the acquiescence of the board during this long period, in his assumption of the power to borrow money and give new obligations as a means of extending the debt, is cogent evidence that the authority intended to be conferred included these transactions. The only fact having a contrary tendency is found in the resolution of November 22, 1867. This resolution, it is claimed, indicates that the board distinguished between the power to borrow money to carry the debt and the power of extension. This single act does not, we think, over-bear the clear indications furnished by the circumstances to which we have alluded, that the board when it passed the annual resolution authorizing the treasurer to procure an extension of the town bounty debt, understood that it included the power to extend by borrowing. The express authority to borrow contained in the resolution of November 22, 1867, may have been inserted to authorize temporary loans in case the treasurer should be unable in the first instance to fund the debt for the considerable time mentioned in the resolution. We are of opinion, therefore, that the authority to extend the debt given in the resolutions included the power to accomplish this purpose by making new loans and paying the matured debts from the proceeds and the giving of new obligations for the new advances. The power, so construed,

was undoubtedly very broad, but for years the board of supervisors appear to have reposed the utmost confidence in the treasurer, and that a power may be abused does not disprove its existence.

The further objection that there was no town bounty debt, and therefore no subject for the exercise of the authority conferred on the treasurer, is clearly untenable. By the twenty-second section of the act of February 9, 1864, the board of supervisors was authorized to borrow money on the credit of a town only upon the vote of a majority of its electors. There was no vote of the towns authorizing the debt, and the money borrowed, by which the town bounty debt (so-called) was created was, in fact, borrowed on the credit of the county, and the town bounty debt mentioned in the resolution was legally a debt of the county and not of the several towns. (*People* v. *Supervisors of Livingston Co.*, 34 N. Y. 516.) It was, however, treated as a town debt and taxes were levied from time to time for its payment. The authority vested in the treasurer related to this debt, whatever may have been its legal character, and in construing the authority it is wholly immaterial that the debt was not described with legal accuracy. There was and could be no mistake as to the debt intended, and it was identified by the description usually employed by the supervisors.

The final question on the merits relates to the liability of the county for the money loaned by Parker, the intestate, in view of the conceded and unquestioned frauds committed by Mann in the assumed exercise of the authority conferred by the resolutions of the board of supervisors. As has been stated, there were outstanding at the expiration of his last term of office in December, 1875, notes made by him as treasurer, exceeding by $118,000 what would have been the actual just debt of the county if the amount raised by taxation subsequent to 1865 had been properly applied, and he had borrowed year by year such an amount only as was necessary to extend the portion of the debt which he was requested to have extended by the supervisors of the respective towns.

The defendant relies upon the general doctrine of agency, that the principal is bound only by acts of the agent, which are within the scope of his commission, and it is, therefore, insisted that Mann could not bind the county by borrowing money or issuing notes in excess of his actual authority. The plaintiffs, on the other hand, while admitting the general rule, invoke the doctrine now firmly established in this State in respect to private agents and the agents of business corporations, " that when the principal has clothed his agent with power to do an act, upon the existence of some extrinsic fact necessarily and peculiarly within the knowledge of the agent, and of the existence of which the act executing the power is itself a representation, a third person, dealing with such agent in entire good faith, pursuant to the apparent power, may rely upon the representation, and the principal is estopped from denying its truth to his prejudice." This statement of the doctrine is taken from the leading case of *N. Y. & N. H. R. R. Co.* v. *Schuyler* (34 N. Y. 30, 73), which finally and conclusively established in this State the principle enunciated, which prior to the decision in that case had been the subject of conflicting adjudications. If we were now called upon to determine whether the principle of the law of agency established by this case applies to public as well as private agents, the question would deserve most careful and grave consideration. It would be necessary to consider, in view of the nature and purposes of public agencies, the manner in which they are usually constituted, the magnitude of the public interests involved in the question and of the dangers to which the public would be exposed, the distinction which in some cases unquestionably exists between the acts of public and private agents and their power to bind their principals, whether these and like considerations afford a just and solid ground for declaring the doctrine adverted to — to be inapplicable to the case of agents charged with the exercise of public trusts, and whether the true rule demanded by public safety does not require that the validity of the acts of public agents must, in all cases, be tested by and exclusively

depend upon their actual authority, of which those dealing with them must at their peril take notice.

But preceding this inquiry is a fact which, in logical sequence, must be first ascertained before the inquiry suggested becomes relevant, and that is whether the transactions between the treasurer and Parker, the intestate, were within or outside of the actual authority conferred on the treasurer by the resolutions of the board of supervisors. The actual authority of the treasurer, as we have held, authorized transactions and dealings in form of the same precise character as those which took place between the treasurer and Parker. The treasurer was authorized to borrow money and give notes therefor binding upon the county, but the authority to borrow was restricted to the amount necessary to extend such part of the town bounty debt as he should be requested by the towns to extend, and the authority to give new obligations was limited to the giving of obligations for the actual debt thus extended or obligations in renewal. It was shown that in fact Mann borrowed money and gave notes largely in excess of his actual authority. Did that proof *prima facie* establish a defense to the action? The plaintiffs, who sought to charge the defendant for the acts of an assumed agent, were bound in the first instance to show his authority, and that the acts of the agent were within the authority, or to give evidence which raised a presumption that the acts were part of the authorized transactions. They proved the resolution of the board of supervisors and the transactions with the intestate. It is a well settled doctrine of agency that whenever the act of the agent is authorized by the terms of the power, that is, whenever comparing the act done by the agent with the words of the power, the act is in itself warranted by the terms used, such act is binding on the constituent as to all persons dealing in good faith with the agent. (COWEN, J., *North River Bank* v. *Aymar*, 3 Hill, 262.) Applying this test to the acts of Mann, nothing is lacking to establish his authority in the transactions with Parker, except that as it was shown that he fraudulently borrowed

money and issued obligations in excess of the limit fixed in the resolutions, and that those transactions may have been a part of the fraudulent dealing. The question arises upon which party the burden rested to identify the transactions of Mann with Parker, as either within or as outside of and in excess of the actual authority. The question, it will be observed, is quite distinct from the question of the liability of the county, assuming that it was established that Mann had borrowed all the money he was authorized to borrow before borrowing of Parker. The present question is what, in the absence of any proof on the subject beyond the fact that frauds were committed by Mann, is the presumption as to the transactions with Parker. Are the plaintiffs entitled to a presumption that they were within the actual authority until further evidence should be given by the defendant tending to identify the particular dealings with Parker as a part of the fraudulent dealings. The cases holding that where conditions precedent to the existence of an agency are imposed, and which must be performed before a delegated authority comes into existence at all, the burden rests upon the party claiming to bind the principal by the act of the agent to show that the precedent conditions have been fulfilled, of which the case of *Starin* v. *Town of Genoa* (*supra*) is an example, are not relevant to the discussion. In the present case the agency was duly constituted. The agent was authorized to borrow money and issue obligations within certain specified limits. Parker loaned his money in good faith upon the assumption that Mann was acting within the limits fixed by the resolutions. The acts done by Mann in form correspond in all respects with the terms of the power. The evidence does not show that they were not within its actual limits. They may, or may not have been. The evidence does not disclose how the fact is. The burden, we think, lay upon the defendant to show that the transactions with Parker were outside of the limits of his authority. The defendant appointed the agent. It fixed a limit to his authority. It reposed a confidence, and persons dealing with

the agent, would naturally assume that he was acting within his powers. If a particular act of an agent is outside of his authority, the principal ordinarily would be best able to show the fact. The defense in this case rests upon an impeachment of the fidelity of Mann in the course of his agency, without proof that he exceeded his authority in the particular instances in question. It is, we think, a just rule, supported by analogies, that when the act of the agent apparently conforms to the authority and includes the particular transaction, and is not in excess of the authority conferred, so far as third persons dealing with the agent can know, the act of the agent is presumptively within the authority conferred ; and that the burden of proving that it was done after the authority was spent rests upon the principal ; and that the burden is not met nor the presumption overthrown by proof that in the course of the agent's dealings he fraudulently exceeded his authority, without showing or giving evidence from which a jury would have a right to infer that the particular transaction was unauthorized ; and we think it makes no difference whether the agency is a general one, or confined to a particular series of transactions for the principal. (*Gansevoort* v. *Williams*, 14 Wend. 138.) It is found, in substance, by the trial judge that the loans made by Parker were made in good faith ; that it did not appear that the treasurer misappropriated any of the money borrowed of Parker ; that at no time did the indebtedness, which the treasurer was authorized to extend, fall short of the loans made by Parker or the notes issued in renewal. In short, the defendant failed to identify the transactions with Parker as in excess of the actual authority vested at the time in the treasurer. It was shown that in some years notes were issued to Parker after the treasurer had renewed notes held by other parties, exceeding in amount the debt which the supervisors had requested him to extend. But there is as much reason for regarding these notes as representing unauthorized loans, as there is for regarding the notes surrendered by Parker on receiving new notes, as of that character. We are of opinion, therefore, that a *prima facie* case was

made by the plaintiffs, which was not overcome by the defendant. This conclusion may subject the defendant to liability for debts which it never authorized, because it seems probable that it may never be able to trace the line between valid and authorized debts and the false and fraudulent over issues. In the case of *Mechanics' Bank* v. *New York and New Haven Railroad Company* (13 N.Y. 599, 619), Comstock, J., referring to a somewhat similar situation, said : " The corporation may be compelled to respond to the holders of certificates amounting in the aggregate to more than its capital, because it cannot distinguish between those which are spurious and those which are genuine." Unless the burden of proof, upon the case now presented, is upon the defendant to distinguish between the genuine and fraudulent transactions, the county by raising a doubt can escape the payment of any part of its indebtedness.

The counsel for the defendant also assails the validity of the resolutions of the supervisors, on the ground that they assumed to delegate to Mann the judicial and legislative power of the board to ascertain and determine the extent and amount of the liabilities of the county, and to audit and allow the same. This objection rests, we think, on a misconception of the scope of the authority conferred. The authority was to procure an extension of the town bounty debt, a debt already existing, having a perfectly defined character, and not to create a new debt or to pass upon or allow a disputed or doubtful claim. The further objection that the claim should have been presented to the board of supervisors for audit is untenable. The bonds and notes of a county, issued for loans authorized by law, are not open *accounts* for county charges, which must be presented to the board for audit.

For the reasons stated, and without passing upon the question whether the county could be charged, in case it had been affirmatively shown that the notes in question were fraudulently issued by the treasurer in excess of his authority, we think the judgment should be affirmed, with a modification,

however, confining the recovery of interest on the notes after January 1, 1880, to the statutory rate of six per cent.

All concur, except Peckham, J., not sitting.

Judgment accordingly.