sewer was that generally used under similar conditions, and had been approved by the city engineer. *Held*, that the contractors were not liable, the accident not being one which they were bound to anticipate and guard against.

Appeal from Westchester county court.

Action by Mary Haskins, as administrator of her husband, Reuben Haskins, against James Stewart and George Stewart, to recover damages for the death of intestate alleged to have been caused by the negligence of defendants. There was a verdict for plaintiff for $5,000. From the judgment entered thereon defendants appeal.

Argued before BARNARD, P. J., and DYKMAN and PRATT, JJ.

*Joseph F. Daly*, for appellants. *Martin J. Keogh*, for respondent.

BARNARD, P. J. The case does not show that the defendants were guilty of actionable negligence. They were contractors for the building of a sewer in Yonkers. The plaintiff's intestate was an employe of the defendants in the construction of the work. The sewer excavation at the place of the accident which caused the intestate's death was a little short of 16 feet in depth, and 5 feet wide at the top. The excavation was protected by planks placed upright against the side. There were placed cross-pieces 4 feet apart between the planks. The upright planks were placed at a distance of 8 feet from each other. Along the top of the cut there were placed from 3 to 6 planks horizontally inside the uprights. Under this method of protection over a half mile of the sewer had been safely constructed. When within 35 feet of the end, a water-pipe which had been placed in the street parallel with the sewer, and within 2 feet or thereabout from the edge of the trench, burst. There was under the public water-main a small private main placed there before the public one was put in. The accident was caused by one of these pipes suddenly bursting and filling the trench with water, and thereby causing a caving in of the banks. It was a question as to which of these pipes caused the accident. The defendants had laid the public water-pipe, but the case does not show that they knew of the existence of the smaller one. The public pipe could be laid without disclosing the smaller one under it. The bursting of either pipe was not one of the calamities which the contractor was bound to anticipate and guard against. There was nothing in the fact that a water-pipe was within two feet of the sewer which called for an additional safeguard against caving in. The bracing used was similar to that commonly used in constructing sewers with conditions similar to this. It was approved by the city engineer, and it did not give way until an unforeseen and unexpected bursting of the water-pipe, in no way connected with the plaintiff's employment. This pipe was along the whole excavation, and sometimes as near as it was when it broke and filled the trench with water. It appeared that the city water-pipe, at the place of fracture, was defective. This fact was unknown to any one before the accident. The case seems therefore to be controlled by *Burke* v. *Witherbee*, 98 N. Y. 562. The protection was safe, judging by a safe use until the accident happened, and then the cause was outside of the danger which could be reasonably expected by the most careful of masters. It is not necessary, therefore, to examine the question whether the accident was within the risks of the employment, or the exception taken on the trial. We think the action failed upon the question of the negligence of the master. There should, therefore, be a new trial granted, with costs to abide event. All concur.

---

BARKER *v.* TOWN OF OSWEGATCHIE *et al.*

(*Supreme Court, Special Term, St. Lawrence County.* January 7, 1890.)

1. COUNTY BOARD—ISSUE OF TOWN BONDS—VALIDITY.
    A resolution of the county board authorizing a town to erect a bridge, and issue its bonds in payment therefor, is rendered entirely void by the board's failure to

require (as provided by Laws N. Y. 1875, c. 482, § 3) adequate security, in addition to that given for the faithful performance of their ordinary duties, from the officers charged with the duty of issuing the bonds and disbursing the proceeds.

2. TOWN BONDS—FORM.

A resolution of the county board authorizing a town to issue its bonds in the usual form of town bonds, with interest coupons payable to bearer at the rate of 4 per cent. per annum, the bonds and interest to be paid at a designated bank and at specified times, substantially complies with Laws N. Y. 1875, c. 482, § 4, which requires the board, in its resolution authorizing the issuance of bonds, to prescribe their form, and to fix the time and place of payment and the rate of interest.

3. BRIDGES — CONSTRUCTION BY TOWN — APPOINTMENT OF COMMISSIONERS BY COUNTY BOARD.

Under Laws N. Y. 1875, c. 482, as amended by Laws 1876, c. 257, and Laws 1885, c. 451, which provides that county boards may authorize towns to build bridges and issue their bonds in payment therefor, the county board may, in its resolution authorizing the building of a bridge, appoint commissioners to supervise its construction, though such power of appointment is not expressly conferred by the act.

Action by Mathew Barker to enjoin the town of Oswegatchie, Daniel Magone, William J. Averell, Fenton Devoy, Alexander Mayne, Henry Lovejoy, and Samuel H. Palmer, as supervisors of said town of Oswegatchie, the board of supervisors of St. Lawrence county, and the board of town auditors of said town of Oswegatchie, from constructing a bridge at the Eel Weir rapids in said town. A temporary injunction was granted, and defendants now move to dissolve it.

*Wales, Hand & Fish* and *George R. Malby,* for plaintiff. *John A. Vance,* for defendant the board of supervisors. *Daniel Magone,* for the other defendants.

TAPPAN, J. This is an action brought by the plaintiff, as a tax-payer of the town of Oswegatchie, in St. Lawrence county, who has been assessed, and has paid taxes within a year from the time of the commencement of the action, in which taxes have been assessed upon an amount exceeding $1,000 against the board of supervisors of said county, said town of Oswegatchie, the supervisor of said town, the board of town auditors of said town, and Daniel Magone and four other persons, who are named in the bill, passed by the said supervisors, as commissioners to construct a bridge at the Eel Weir rapids across the Oswegatchie river, in said town, to enjoin the defendants from taking any further action under said bill, and for a temporary injunction pending the action, and for further relief. The complaint is framed under chapter 673 of the Laws of 1887, and section 1925 of the Code of Civil Procedure. On December 18, 1889, a temporary injunction was granted. This motion, heard upon an order to show cause, is made upon the complaint and affidavit upon which the injunction was granted, and affidavits upon the part of defendants, who move to vacate said temporary injunction. Upon the petition of more than 12 electors of said town presented to the town-clerk, the latter, on the 25th day of October, 1889, gave notice of a special town-meeting to be held on Saturday, the 2d day of November, 1889; the polls to be opened at 1 o'clock, and to close at 4 P. M. that day. The notice stated that the meeting would be held for the purpose of raising and appropriating the necessary money to maintain the bridge across the Oswegatchie river at the Eel Weir rapids in said town, and that a resolution would be offered in said special town-meeting to raise a sum, not exceeding the sum of $10,000, for that purpose. Such special town-meeting was duly held at the time and place designated in the notice, and the electors voted by ballot to raise and appropriate $10,000, the ballots being 152 for, and 3 against, the resolution. At about the time of the opening of the meeting a resolution in writing was offered. It was not acted upon until near the close of the voting, when it was passed by a *viva voce* vote, and was as follows: "Resolved, that we hereby request the supervisor of the town of Oswegatchie, and the several ward supervisors of the city of Ogdensburg, to secure the passage of an act at the next

session of the board of supervisors of St. Lawrence county authorizing the supervisor to borrow money to build a new bridge across the Oswegatchie river, at the Eel Weir rapids, on the site of the present bridge, and appointing William J. Averell, Daniel Magone, of Ogdensburg, Fenton Devoy, Henry Lovejoy, and Alexander Mayne, of Oswegatchie, commissioners to construct such bridge in such form and manner as they shall deem for the best interests of the town, and that the order of such commissioners on the supervisor of the town shall be his warrant for disbursements to be made from time to time, as may be necessary, in payment on account of said bridge, not to exceed the sum of ten thousand dollars. The said commissioners shall be entitled to three dollars per day for each day actually employed." On November 21, 1889, the board of supervisors of St. Lawrence county passed the following bill:

"The board of supervisors of St. Lawrence county do enact as follows:

"Section 1. In accordance with a resolution adopted at a special town-meeting of the town of Oswegatchie, called and held pursuant to law, the supervisor of said town is hereby authorized to borrow on the credit of said town a sum not exceeding ten thousand dollars, at a rate of interest not exceeding four and one-half per cent. per annum, and execute the bonds of the town therefor, which bonds, and the annual interest thereon, shall become due and payable at the Ogdensburg Bank, in Ogdensburg, in said town, as follows: 'Two thousand dollars on the first day of February in each of the years 1891, 1892, 1893, 1894, and 1895, respectively; interest to be paid annually on the first day of February on all sums remaining unpaid.' There shall be levied and collected from the taxable property of said town in each year preceding the date at which the said bonds become due such sums of money as shall be required to pay interest on said bonds, and the face thereof, at maturity.

"Sec. 2. Said bonds shall be in the usual form of town bonds, coupons payable to bearer, and shall be signed by the supervisor, and countersigned by the town-clerk of said town, and a true record shall be kept thereof by both said supervisor and town-clerk. The supervisor of said town shall sell said bonds for the highest price he can obtain therefor, but not less than par value, and the whole, or so much of the money received from the sale thereof as shall be necessary, shall be paid over to the commissioners hereinafter provided for, upon their order, in payment for the construction of the bridge across the Eel Weir rapids in said town on the site of the present bridge.

"Sec. 3. William J. Averell, Fenton Devoy, Alexander Mayne, Henry Lovejoy, and Daniel Magone, of said town, are hereby appointed commissioners for said town, to construct the bridge hereinbefore provided for. Such commissioners shall keep a record of their proceedings, and no action taken by any of the said commissioners individually shall in any manner bind said town. Their order on the supervisor of said town shall be his warrant for payment, on account of building such bridge. They shall, on or before the first Monday of November, 1890, and annually thereafter, until such bridge is fully completed, file a verified statement of their expenditures with the town-clerk of said town, which account shall be subject to audit by the board of town audit. The commissioners shall receive three dollars per day for each and every day devoted to the carrying out of their duties under this act.

"Sec. 4. This act shall take effect immediately."

The complaint alleges that the board of supervisors and the said board of town auditors intend to take illegal action in pursuance of said bill or resolution of said board of supervisors, and that the defendants named as commissioners and the said supervisor have taken and intend to take further illegal action thereon. The complaint further alleges that the said bill, act, or resolution of the board of supervisors is invalid in the following particulars: (1) The authority to issue bonds as herein provided is irregular, illegal, and void, and that said bill, act, or resolution of the said board of supervisors does not contain, as required by section 3, c. 482, of the Laws of 1875, a provision requiring

adequate security, in addition to the security now required by law to be giver by the officer authorized by said bill, act, or resolution, to issue bonds thereunder. The provision referred to (subdivision 6 of section 1 of said act) provides that the board of supervisors may authorize any town or towns liable for the erection, care, repair, and maintenance, in whole or in part, of any bridge, to erect, repair, and maintain the same, and to borrow such sums of money, in the manner provided in subdivision 29 of this section, as may be necessary for the purposes of such erection, repair, and maintenance. Subdivision 29 of said section allows said board to authorize any town to issue its bonds, and borrow money thereon, for a term not exceeding 20 years, for any purpose specified in subdivision 6 of this section, but every act authorizing such loan shall provide for the imposition of taxes to pay the same in equal yearly installments, with interest thereon, within the time specified in this subdivision. Section 3 of said act provides that in every resolution of the board of supervisors authorizing the issue of bonds or other obligations, there shall be contained a provision requiring adequate security, in addition to the security now required by law, to be given by the officer or by the board of officers authorized to issue them, for the faithful performance of his or their duty in the issue of such bonds, and the lawful application of the funds arising therefrom, and the full accounting therefor, and of the funds that may be raised by tax for the payment thereof, which may come into his or their hands annually, to the board of supervisors. The board of supervisors has no powers except those vested in it by legislative enactment. The powers vested in such board by such enactment can only be exercised in the manner therein stated and required. *In re Second Ave. M. E. Church*, 66 N. Y. 395; *Parker* v. *Supervisors*, 106 N. Y. 392, 13 N. E. Rep. 308, (see opinion at page 410, and cases there cited;) *Cook* v. *Kelly*, 14 Abb. Pr. 466; *Hardmann* v. *Bowen*, 39 N. Y. 196; *Wuesthoff* v. *Insurance Co.*, 107 N. Y. 580, 14 N. E. Rep. 811. Every substantial requirement or condition in regard to the exercise of such powers beneficial to any citizen must be observed and carefully complied with, or the action of the board cannot be sustained. The scheme of the resolution or bill was to authorize the supervisor to borrow money upon the bonds of the town, pay the same to the commissioners therein named, to be used in building the bridge, and to raise the money by tax upon the town to pay the principal and interest as the bonds became due. This money, when raised by tax, would be paid by the collector to the supervisor, to be by him paid to the holders of the bonds. The security required by section 3, which should have been provided for by the supervisors' bill, was essential for the protection of the citizens of the town, and its omission was fatal to the validity of the bill. I think this is more than a mere irregularity. The provision for security was an essential element of the whole scheme. If any portion of the bill had been unaffected by this omission, such portion would have been held valid upon the principle applied to unconstitutional acts of the legislature, which is that when a part of a statute is unconstitutional it does not affect the validity of the remainder unless the provisions are so interdependent that one cannot operate without the other, or are so related in substance and object that it is impossible to suppose that the legislature would have passed the one without the other. The following decisions illustrate the principle: *In re Village of Middletown*, 82 N. Y. 196; *People* v. *Kenney*, 96 N. Y. 294; *People* v. *Briggs*, 50 N. Y. 553; *Harbeck* v. *Mayor, etc.*, 10 Bosw. 366; *People* v. *Squires*, 1 N. Y. St. Rep. 633. The act or bill of the board of supervisors contemplated the borrowing of money by the supervisor of the town, to be paid to and used by the commissioners appointed by the act. As it did not require the supervisor to give the security required by law, that officer could borrow no money, and the commissioners would have no funds with which to build a bridge. Without funds, or the authority under the act which appointed them to raise funds, that commissioner could neither build nor contract to build a bridge. As

there would be no loan to pay, no tax could be raised, and the whole scheme of the act is defeated, and the whole act therefore void.

The complaint further alleges that the authority to issue bonds as in said act provided is irregular, illegal, and void, in that such act does not specify, as required by section 4, c. 482, of the Laws of 1875, the form of the obligations or bonds to be issued. The section referred to provides that "in every resolution of such board authorizing the issue of any bond or other obligation of debt, the form of the obligation to be issued, the time and place of payment thereof, and the rate of interest to be paid thereon, not exceeding seven per centum per annum, shall be specified." Sections 1 and 2 of said act of the board of supervisors authorized the borrowing of money and the issuing of bonds in the usual form of town bonds, with interest coupons payable to bearer, at a rate of interest not exceeding $4\frac{1}{2}$ per cent. per annum, which bonds, and the annual interest thereon, shall become due and payable at the Ogdensburg Bank in Ogdensburg, $2,000 on the 1st day of February in each of the years 1891, 1892, 1893, 1894, and 1895, respectively, interest to be paid annually on the 1st day of February on all sums remaining unpaid, said bonds to be signed by the supervisor, and countersigned by the town-clerk of said town. I think this a substantial, sufficient compliance with the provisions of the section referred to, and that this objection to the act is not well taken.

The complaint further alleges that the appointment of the defendants Magone, Devoy, Mayne, Averell, and Lovejoy commissioners of said town to construct the bridge provided for by said act or resolution of said board, and to expend the funds raised therefor, is illegal, in that it is contrary to the general highway laws of the state, and particularly to chapter 377 of the Laws of 1878, as amended by chapter 67 of the Laws of 1879, which vests the power to rebuild said bridge under its provisions in the commissioner of highways of the town of Oswegatchie, and the said board of supervisors has no power, right, or authority in the premises to appoint said commissioners, and the appointment of said commissioners is a nullity. To reach a correct conclusion upon the point stated in this objection will require an examination of the different statutes and decisions. Section 18 of article 3 of the constitution of the state, as adopted in an amendment made in 1874, provides that "the legislature shall not pass any private or local bill providing for building bridges," and in section 23 of article 3 of such constitution it is provided that "the legislature shall, by general laws, confer upon the boards of supervisors of the several counties of the state such further power of local legislation and administration as the legislature may from time to time deem expedient." Under these constitutional provisions, and to carry the same into effect, chapter 482 of the Laws of 1875 and its amendments were passed; as were also other acts not stated in the title to the amendments of that act. If there is authority to appoint such commissioners given to boards of supervisors, it is contained in some statute, as such boards, as before stated, have only the authority given to them by statute, in accordance with these constitutional provisions. The legislature can delegate its powers only as the constitution expressly authorizes it. *Barto* v. *Himrod*, 8 N. Y. 483. The legislature had the power to appoint commissioners to build a bridge or highway previous to the adoption of the amendment to the constitution hereinbefore mentioned, in 1874, and such power had before that time been frequently exercised by the legislature throughout the state. Chapter 340, Laws 1866; chapter 235, Laws 1874. The above laws furnish instances where bridges were built across the Oswegatchie river, in the town of Oswegatchie, by commissioners appointed by the acts of the legislature referred to. The constitution, as amended in 1874, also prohibited the legislature from passing any private or local bill "laying out, opening, altering, or discontinuing roads or highways," but section 23 of the same article authorizes the legislature to enact general laws conferring

upon boards of supervisors "such further power of local legislation as from time to time it·may deem expedient." In *People* v. *Supervisors,* 20 N. E. Rep. 549, the court held that the effect of the amendment was to take from the legislature the power that it heretofore possessed to pass laws laying out, altering, or working highways, operating independently of the local authorities, and by their own force, while at the same time it preserved to the legislature the power to vest in boards of supervisors within their respective jurisdictions the same powers in respect to laying out, opening, and working highways which the legislature could itself no longer exercise; that the constitutional amendment did not abrogate the pre-existing power of the legislature over the subject. It simply transferred it to·the local boards in case the legislature should deem it expedient, and should so enact. Before the adoption of this amendment of the constitution the legislature had, by chapter 865 of the Laws of 1869, conferred general powers upon boards of supervisors to authorize the construction of bridges under certain conditions. Pursuant to the constitutional amendment the legislature passed chapter 482 of the Laws .of 1875, amended by chapter 257, Laws 1876, and chapter 451, Laws 1885. Section 1, subd. 6, as thus amended, permits the board of supervisors to authorize any town liable or to be made liable to taxation for the erection, care, repair, and maintenance, in whole or in part, of any bridge, to erect, repair, and maintain· the same, and to borrow such sums of money in the manner provided by subdivision 29 of that section as may be necessary for the purpose of erection, repair, and maintenance, and to pay any debt incurred in good faith by or in behalf of such town or towns, before or after the passage of such act. And if any town at a regular town-meeting held between the 1st day of February, 1875, and the passage of this act shall have elected commissioners for the purpose of building a bridge, and providing money to pay for the same, by the issuing of bonds, or otherwise, such bonds, not exceeding the amount authorized at such town-meeting, are hereby authorized and declared valid. This provision at once suggests the question, how may the board of supervisors authorize a town liable to build a bridge to build it? May authority be given to build it by commissioners named in the bill of the supervisors,—as the legislature had been accustomed to authorize the building of bridges before the constitutional amendment of 1874,—or must the supervisors authorize the building of the bridge, the loan to be made for that purpose, and provide·that the money to be raised for that purpose be paid to the commissioner of highways, and the money be expended by him in erecting the bridge? In *People* v. *Meach,* 14 Abb. Pr. (N. S.) 429, the court held that commissioners might be appointed to build a bridge under section 2, c. 855, of Laws of 1869, although no express authority is given by that act to appoint commissioners. This is the language of the court: "The objection that the commissioners are not the proper agents of the board of supervisors to execute the power of building the bridge, and that this should be executed by town or village authorities, I regard as unfounded. The supervisors have the power, and may execute it in any way that satisfies their sound discretion. No particular set of agents is required by the statute or by the general law. The practice of doing it by commissioners is a very general one, and approved by usage of long standing. I do not regard it as the usurpation of an office, but the execution of an agency." In *Kirkwood* v. *Newburg,* 45 Hun, 323, the question was directly up as to the power of the board of supervisors to appoint commissioners to build a bridge under subdivision 6, § 1, of the Act of 1875, as amended by the beforementioned acts, and the court said: "The plaintiff does not claim that the statute is unconstitutional, but that it does not confer power upon boards of supervisors to appoint commissioners for a town, and compel it to unite with an adjoining town in building a new bridge where one had not previously existed, and issue bonds for the expense thereof, upon the application of the adjoining town. It is elementary law

that when a legislative body has power to direct the performance of an act, it may, unless forbidden, select the agents by which the act shall be performed. The commissioners appointed to build the bridge and issue the bonds are not officers of the town of Kirkwood, within the second section of the tenth article of the constitution, and it does not require that they be elected by the electors or appointed by the authorities of the town." To sustain this last proposition, see *People* v. *McDonald*, 69 N. Y. 362.

Upon an examination of the different statutes relating to highways and bridges, I find nothing prohibiting the appointment of commissioners for building a bridge. Neither do I find that the general laws devolve the duty of the care, superintendence, and repair of roads and bridges of a town upon the commissioner of highways; nor that money raised for building or repairing bridges, unless by the act by which it is raised, directed to be paid to some agent of the board of supervisors, must be paid over to the commissioners of highways, and expended by them; nor that in some cases stated in the laws conferring authority upon boards of supervisors such boards are specially authorized to appoint commissioners for certain highway or bridge purposes; nor that it necessarily follows that such boards are not authorized to appoint commissioners to build bridges under section 1, subd. 6, c. 482, of the Laws of 1875. In my opinion there is such power.

Notice of the special town-meeting to raise money to build the bridge allowed the electors to vote upon the appointment of commissioners to expend the money in building the bridge. An appropriation of the money to be expended in that way was not an appropriation which could be expended by the commissioner of highways. It might well be argued that if the appropriation had not been coupled with the appointment of commissioners to expend it it would not have been made. The board of supervisors would not have authority to act under section 1, subd. 6, c. 482, of the Laws of 1875, except to pass a bill to give full effect to the action of the special town-meeting. The power of the board is to authorize and render the proceedings of the special town-meeting effectual. It follows that the motion to dissolve the injunction must be denied, and the injunction continued until the determination of the action, except that it may be modified by stating that it is not to be construed to prevent the board of supervisors from enacting such further act, bill, or resolution as it shall deem necessary to give full authority and effect to the vote taken at the special town-meeting, and render the same effectual, and in conformity to the law of the state. No costs to either party.